IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SEAN DUBECK,

                    Plaintiff,

          vs.

MARION LAW OFFICES, and WILLIAM H.
MARION,

                    Defendants.

**8:20-CV-149**

**MEMORANDUM AND ORDER**

## I.      INTRODUCTION

Sean Dubeck has filed a Motion to Set Aside Judgment, requesting that the Court vacate

its prior Memorandum and Order granting summary judgment to Marion Law Offices ("Marion

Law") and William H. Marion ("Marion") and its entry of Judgment in Defendants' favor. Filing

36. Defendants oppose Dubeck's Motion. Filing 37. For the reasons stated herein, the Court denies

Dubeck's Motion.

## II.      BACKGROUND

Dubeck sued Defendants for violating the Fair Debt Collection Practices Act ("FDCPA")

and the Nebraska Consumer Protection Act ("Nebraska CPA"). Filing 1 at 5–7. Concurrent with

this federal litigation, Bill-Mar, LLC,[1] a nonparty owned by defendant Marion, filed a state-court

---

[1] It is unclear to the Court what the name of Marion's lawncare company is. The parties refer to it as "Bill Mar,
LLC," Filing 37 at 6, "Bill Mar Lawns, LLC," and "Bill-Mar Lawn and Landscaping." Filing 39-1 at 2. For the
purposes of clarity, the Court refers to the company as "Bill-Mar, LLC."

action against Dubeck for breach of contract and unjust enrichment. Filing 37 at 6; Filing 39-1 at

13–14, 26–27. In both actions, Matthew P. Saathoff represented Dubeck. Filing 39-1 at 1–2. In

this Court, Corey J. Rooney represented Defendants. Filing 37 at 6–7; Filing 39-1 at 1–2. A third,

attorney, Jason Hubbard, represented Bill-Mar, LLC, in the state-court case. Filing 37 at 6–7.

Hubbard never entered his appearance in this case; instead, Rooney was the only counsel of record

for Defendants.

On June 16, 2021, Defendants filed a Motion for Summary Judgment in this case. Filing

26. While this Motion was pending, Hubbard, who was representing Bill-Mar, LLC, as the plaintiff

in the state-court case, filed a motion to dismiss without prejudice on August 26, 2021, which the

state court granted. Filing 39-1 at 39–43. According to Marion, he never authorized Hubbard to

file the motion to dismiss without prejudice. Filing 37 at 7. Marion claims Hubbard filed the motion

to dismiss without prejudice after Saathoff threatened to sue Hubbard's law firm under the FDCPA

for misspelling Bill-Mar, LLC, in the complaint. Filing 37 at 6.

On August 27, 2021, Hubbard emailed Saathoff purportedly offering $15,000 from Marion

in exchange for dismissing the suit in this case. Filing 39-1 at 45. The email states:

> Bill Marion offers to pay a lump sum of $15,000 in exchange for a dismissal of the
> federal case against his law office. If accepted, parties will enter into a settlement
> agreement and release all claims against one another and be forever done with this
> matter. Please let me know if this is acceptable to your client. For settlement
> purposes only.

Filing 39-1 at 45. Copied on the email were Marion and counsel for Defendants in this case,

Rooney. Filing 39-1 at 45.  The record does not show if Dubeck or Saathoff responded to the email.

According to Marion, he told Hubbard that he would consider an offer of $15,000 or lower that

contained terms he found acceptable and that would allow him to proceed with a collection action

against Dubeck. Filing 37 at 7. Moreover, Marion claims Hubbard told him that Saathoff would send an offer in writing that he could review with Rooney. Filing 37 at 7.

Beginning on September 8, 2021, Saathoff and Hubbard began exchanging text messages about the dispute between Dubeck and Marion. Filing 39-1 at 46–49. Saathoff messaged Hubbard asking if he had any updates from Marion. Filing 39-1 at 46. Hubbard replied asking Saathoff to "make [his] life easier and just take the 15k," and informed Saathoff that he "did talk to Marion." Filing 39-1 at 46. Saathoff told Hubbard he would talk to Dubeck, and on September 9, 2021, he said, "Take the 15k." Filing 39-1 at 46. Hubbard told Saathoff he would tell Marion, and later stated, "Ok we are all done at 15k." Filing 39-1 at 46.

On September 14, 2021, Hubbard asked Saathoff by text if he would send a settlement and release and inquired if Saathoff wanted him to prepare the settlement agreement. Filing 39-1 at 49. Saathoff responded by asking Hubbard to draft the agreement. Filing 39-1 at 49. Two days later, Hubbard told Saathoff, "It's on my short stack." Filing 39-1 at 49. Saathoff never informed the Court about his settlement negotiations with Hubbard, who was not the counsel of record for Defendants in this case. There is no evidence in the record that Saathoff negotiated a settlement with Rooney or sent him a proposed settlement agreement.

On September 24, 2021, the Court, unaware of any settlement negotiations between Saathoff and Hubbard, filed its Memorandum and Order granting summary judgment to Defendants. Filing 34. The Court entered Judgment in Defendants' favor that same day. Filing 35. Five days afterward, on September 29, 2021, Saathoff filed his Motion to Set Aside Judgment. Filing 36. In his Motion, Saathoff represented to the Court that this case, "was fully resolved for $15,000 prior to the Court entering its Order and Judgment, wherein Defendant, by and through

one of his attorneys, made an offer and Plaintiff, by and through his counsel, accepted the offer

made." Filing 36-1 at 2.

On October 1, 2021, which is after Saathoff filed his Motion, Hubbard shared a link with

Saathoff to a document for him to edit titled "Mutual Settlement and Release Agreement Bill

Marion v Sean Dubeck." Filing 39-1 at 53. Hubbard also sent an email stating that the document

he shared was a "copy of a proposed settlement agreement," and that Saathoff could make changes

himself or ask Hubbard's paralegal to make revisions. Filing 39-1 at 52. Saathoff responded the

following day requesting that the settlement agreement add a release from Bill-Mar, LLC. Filing

39-1 at 51. Hubbard's paralegal replied on October 4, 2021, stating that he made the change and

to let him know if Saathoff wanted any other changes or updates. Filing 39-1 at 51. Saathoff sent

an email back stating that he had no more revisions to make. Filing 39-1 at 50.

On October 5, 2021, Rooney emailed the magistrate judge in this case stating he was

unaware of any agreement between Marion and Dubeck to settle this case. Filing 39-1 at 65. Later

that day, Saathoff sent a text to Hubbard saying, "Check your email" and included a vulgar

statement expressing annoyance, presumably at Rooney. Filing 39-1 at 64. Hubbard replied saying

he did not know what Rooney was telling Marion and that Marion had told him to draft a settlement

agreement to send to everyone. Filing 39-1 at 64. Saathoff asked Hubbard to "get to the bottom of

this," stated that Rooney had been copied on all the emails,[2] and said that he might need an affidavit

from Hubbard. Filing 39-1 at 64. Saathoff twice asked Hubbard to give him a call. Filing 39-1 at

64. Hubbard replied that he was on vacation. Filing 39-1 at 64.

Nine days later, on October 15, 2021, Saathoff sent the proposed settlement agreement,

which Dubeck had signed on October 7, 2021, to Hubbard and asked Marion to sign it. Filing 39-

---

[2] The only email Rooney was copied on was the August 7, 2021, email. Filing 39-1 at 45.

1 at 50. Marion never signed the settlement agreement and claims that he did not receive the proposed settlement agreement until October 19, 2021. Filing 37 at 8; Filing 39-1 at 63. The record does not reveal any additional communications between the parties. The proposed settlement agreement provides that Marion Law will pay $15,000 to Dubeck; Dubeck will release all claims against Marion and Marion Law; and Marion, Marion Law, and Bill-Mar, LLC, will release all claims against Dubeck. Filing 39-1 at 59–60. It also contains a provision stating that Saathoff's law firm will not file any FDCPA action against Marion Law, Marion, or Hubbard's law firm. Filing 39-1 at 63. According to Marion, the proposed settlement agreement contains provisions to which he never would have agreed. Filing 37 at 7.

### III.   ANALYSIS

#### A.  Standard of Review

A party may move to vacate judgment pursuant to Federal Rule of Civil Procedure 60(b). *See* Fed. R. Civ. P. 60(b). The decision to grant or deny a Rule 60(b) motion is "committed to the sound discretion of the trial court." *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996). When a party alleges that it entered into a binding settlement agreement in support of its motion to vacate, the issue is whether the parties reached a binding settlement agreement before the Court issued its order and judgment. *See Sheng v. Starkey Lab'ys, Inc.*, 117 F.3d 1081, 1083– 84 (8th Cir. 1997) ("[I]f the parties had entered a binding settlement, the district court abused its discretion in granting [the motion]."). If the parties agreed to a binding settlement prior to the Court issuing its order and judgment, the agreement "generally moots the action." *Serta Simmons Bedding, LLC v. Casper Sleep Inc.*, 950 F.3d 849, 853 (Fed. Cir. 2020). However, if the parties did not reach a binding settlement prior to the Court's order, the court retains jurisdiction and may rule on a dispositive motion and enter judgment. *See Selcke v. New England Ins. Co.*, 2 F.3d 790,

791–92 (7th Cir. 1993) ("Until the settlement becomes final, however, the case is not moot, since the settlement may never become final.").

### B. The Parties Did Not Reach a Binding Settlement Agreement

In support of his Motion, Dubeck argues that the parties reached a binding settlement agreement on September 8, 2021. Filing 39 at 5–6. Specifically, Dubeck claims that the series of text messages beginning on September 8, 2021, show that Saathoff and Hubbard agreed to a settlement of $15,000 on behalf of their clients. Filing 39 at 5–6. Dubeck points out that, after Saathoff informed Hubbard that Dubeck was willing to settle for $15,000, Hubbard said that he would speak with Marion, and then said, "Ok we are done at 15k." According to Dubeck, at this point the parties had entered into a binding settlement agreement because "there had been a definite offer and unconditional acceptance." Filing 39 at 5.

When it comes to counsel's duty to inform the Court of settlement negotiations, particularly when the Court has a dispositive motion pending before it, the Seventh Circuit has put it best: "When the settlement of a case becomes reasonably certain, the usual and sensible practice is for the parties to advise the court of this fact so that the court can decide whether to suspend its consideration of the case in the expectation that the case will soon be moot." *Selcke*, 2 F.3d at 791. "[I]n order to spare busy courts unnecessary work, parties must advise a court when settlement is imminent." *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993). "The duty is implicit in the characterization of lawyers as officers of the court, and a breach of it therefore opens a lawyer to sanctions." *Id.* The Court's local rules incorporate this principle by requiring attorneys to "notify the court or clerk when the parties settle an action." NECivR 41.1.

In this case, Saathoff breached his duty to inform the Court that this action had purportedly been settled. While Saathoff attempts to shift some of the blame to Rooney, he has presented no

evidence that Rooney was aware of the negotiations by text message between Saathoff and Hubbard.[3] When Saathoff was negotiating a settlement to dismiss this case with an attorney in an entirely different case, it would have been prudent for him to inform the court that a settlement was likely. Saathoff claims that a settlement agreement was reached on September 9, 2021, meaning that he had two weeks to inform the Court of the purported agreement before the Court filed its Memorandum and Order on September 24, 2021. In fact, Nebraska Civil Rule 41.1 required him to do so. Saathoff's failure to inform the Court of the settlement negotiations and purported agreement resulted in the Court spending time and resources drafting its Memorandum and Order on Defendants' Motion for Summary Judgment, and has required the Court to expend further effort in ruling on this motion. In the Court's opinion, Saathoff's violation of Rule 41.1 provides a sufficient basis with which to deny the Motion to Set Aside Judgment. The Court will, however, consider Nebraska law to determine if the parties did reach a binding settlement agreement.

Turning to Dubeck's Motion, the Court first concludes that the parties did not enter into a binding settlement agreement under Nebraska contract law. "To have a settlement agreement, there must be a definite offer and an unconditional acceptance." *Fleming Co. of Nebraska v. Michals,* 433 N.W.2d 505, 507 (Neb. 1988). Importantly, "A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract." *Smith v. King*, 953 N.W.2d 258, 278 (Neb. Ct. App. 2020). Here, the essential terms and conditions were payment by Marion to Dubeck and a release from liability between the parties. However, as is made clear through subsequent negotiations over

---

[3] The email on which Hubbard copied Rooney was sent prior to Saathoff and Hubbard's negotiation via text messages. Filing 39-1 at 45–47. Moreover, Rooney was never copied on the emails in October showing Hubbard and Saathoff attempting to finalize a settlement agreement. Filing 39-1 at 50–53. The Court does not believe Hubbard copying Marion to these emails imputes any knowledge on Rooney.

the draft settlement agreement, Saathoff required that a nonparty, Bill-Mar, LLC, release all claims

it had against Dubeck, while Hubbard apparently requested an agreement from Saathoff that he

would not file suit against Hubbard's law firm. Filing 39-1 at 51, 60, 63. But the August 27, 2021,

email only said that Marion offered $15,000 for dismissal of the federal claim, and did not

reference the rights of Bill-Mar, LLC, and a potential lawsuit against Hubbard's law firm. Filing

39-1 at 45. These other releases of liability that ultimately entered the proposed settlement

agreement are not contemplated by the text of the August 27, 2021, email. Because the parties

added essential terms after the text message negotiations, the Court concludes that there was not a

"meeting of the minds of the parties as to the essential terms and conditions of the proposed

contract." *Smith*, 953 N.W.2d at 278; *see also Strategic Staff Mgmt., Inc. v. Roseland*, 619 N.W.2d

230, 235 (Neb. 2000) ("A contract provision to execute effectuating documents in the future is

enforceable where all of the material terms are specified in the original contract and leave none to

be agreed upon through future negotiations."). Thus, under Nebraska contract law, the Court finds

that the parties never reached a binding settlement and denies Dubeck's Motion to Set Aside

Judgment.

Moreover, even if Saathoff and Hubbard had reached a settlement agreement through their

text message negotiations, the Court also finds that Hubbard did not have express authorization

from Marion to enter into a binding settlement agreement. The Court finds that Hubbard had the

authority to assess Dubeck's interest in settling the federal case for $15,000, and then to draft a

proposed settlement agreement for Marion and Rooney to review. "Nebraska law is clear that the

decision to settle a lawsuit belongs to the client; because the client bears the risk when settling or

refusing to settle a dispute, it is the client, not the lawyer, who should assess whether the risk is

acceptable." *Luethke v. Suhr*, 650 N.W.2d 220, 225 (Neb. 2002). Simply employing or retaining a

lawyer does not grant the lawyer actual, apparent, or implied authority to bind the lawyer's client

to a settlement. *Id.* Rather, "[A] lawyer cannot settle a client's claim without express authority from

the client." *Id.* at 226. Whether an attorney had express authorization from his or her client to settle

a claim is "a factual question for the trial court to determine." *Id.* at 227.

To determine the extent of Hubbard's authority, the Court examines what Marion claims

he told Hubbard and Hubbard's statements to Saathoff through text message and email.[4] Marion

contends that he felt confident with his Motion for Summary Judgment in this case, but advised

Hubbard that he would consider an offer of $15,000 or lower and a settlement agreement

containing terms he felt were appropriate and allowed him to proceed with his collection case in

state court. Filing 37 at 7. According to Marion, Hubbard stated that Saathoff would send him a

proposed settlement agreement for him and Rooney to review before agreeing to it. Filing 37 at 7.

Marion further alleges that he asked Hubbard about the status of the settlement proposal so he

could review it with Rooney. Filing 37 at 7. According to Marion, the proposed settlement

agreement he received contained several provisions that he found unacceptable. Filing 37 at 7.

Looking to the communications between Saathoff and Hubbard, the Court observes that

the August 27, 2021, email from Hubbard to Saathoff stated that Marion offered $15,000 in

exchange for dismissal of the federal case against him, and further stated that if accepted the parties

would enter into a settlement agreement and release their claims against each other. Filing 39-1 at

46. In the September 8, 2021, through September 9, 2021, text message exchange between

Hubbard and Saathoff, Saathoff told Hubbard that Dubeck accepted the offer of $15,000. Filing

---

[4] Although the Eighth Circuit has held that evidentiary hearings over these types of issues is desirable, *see Sheng v. Starkey Lab'ys, Inc.*, 53 F.3d 192, 194–95 (8th Cir. 1995), "this rule presupposes that there are essential issues of fact that can only be properly resolved by such a hearing." *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996). Given the Court's "considerable discretion to tailor the proceedings to the practical realities surrounding the particular motion," *id.*, the Court finds that a hearing is not necessary to rule on this motion. Dubeck filed a significant number of exhibits in support of his motion, and the Court believes that the evidence before it is sufficient to make a ruling on this issue.

39-1 at 46. Hubbard then told Saathoff he would tell Marion, and later sent a message stating, "Ok we are all done at 15k." Filing 39-1 at 46. Hubbard then began drafting a settlement agreement, to which Saathoff later requested adding a provision stating that Bill-Mar, LLC, released Dubeck from liability. Filing 39-1 at 51, 60. The settlement draft also included a provision protecting Hubbard's law firm from suit by Saathoff. Filing 39-1 at 63.

The Court concludes that, based on the facts above, Hubbard did not have express authority from Marion to enter a binding settlement agreement to pay $15,000 in exchange for dismissal of the federal case. First, and most important in the Court's view, Hubbard did not represent Marion in this case. Instead, he was counsel for Bill-Mar, LLC, a nonparty, in the state-court case against Dubeck. The Court finds credible Marion's claim that he only authorized Hubbard to offer $15,000 and to draft an agreement for him and defense counsel in this case, Rooney, to review.

Second, Hubbard's conduct is consistent with Marion's claim that he only authorized Hubbard to make an offer and to draft a proposed settlement agreement for his review. The August 27, 2021, email stated that after Dubeck accepted $15,000 the parties would enter into a settlement agreement and release all claims against one another. Filing 39-1 at 45. Therefore, the email contemplates that there will be future action taken by the parties before they reached a binding settlement agreement. This is consistent with Marion's claim that he required Hubbard to send him a draft of the settlement agreement for his review before he would agree to a binding settlement. Moreover, the email also stated that the $15,000 was offered in exchange for dismissing the federal case. Nothing in the email refers to the state-court case that Bill-Mar, LLC, brought against Dubeck. Yet, the proposed settlement agreement drafted by Hubbard and Saathoff included a provision stating that Bill-Mar, LLC, released Dubeck from any liability and contained an agreement from Saathoff's law firm that he would not sue Marion, Marion Law, and Hubbard's

10

law firm. Filing 39-1 at 60, 63. It would be natural for Marion to want to review releasing a state-law claim and insulating Hubbard's law firm from liability, which were not the subject of the August 27, 2021, email, before entering into binding settlement. Overall, the fact that Hubbard was not Marion's attorney in this case, combined with his conduct, support the Court's conclusion that he did not have express authority to enter into a binding settlement agreement to dismiss the federal case.

The Nebraska Supreme Court has warned attorneys of the potential hazards when negotiating settlement agreements. The Court has explained, "[I]f the lawyer seeks to enter a settlement, the opposing party should ascertain whether the lawyer has received actual authority from the client to take such action." *Luethke*, 650 N.W.2d at 226. "A party who enters a settlement agreement without verifying the opposing counsel's actual authority to settle does so at his or her peril." *Id.* Here, Saathoff negotiated with Hubbard, who was not counsel of record in this case, at his own peril. The Court finds that Hubbard did not have express authority to enter into a binding settlement agreement and denies Dubeck's Motion to Set Aside Judgment.

## IV.   CONCLUSION

After reviewing the record, the Court concludes that, under Nebraska contract law, the parties did not enter into a binding settlement agreement. The Court also concludes that Hubbard did not have express authority to enter into a binding settlement agreement on Defendants' behalf. On either basis, the Court denies Dubeck's Motion to Set Aside Judgment. Accordingly,

IT IS ORDERED:

1.  Dubeck's Motion to Set Aside Judgment, Filing 36, is denied.

Dated this 9th day of November, 2021.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge